IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JACK A. NISSIM,

      Plaintiff,

   v.

WELLS FARGO BANK, N.A.; FIRST
AMERICAN TITLE COMPANY; ATLANTIC
BANCORP; and NICHOLAS DUDUM,

      Defendants.

_____/

No. C 12-1201 CW

ORDER GRANTING
MOTIONS TO DISMISS
(Docket Nos. 17,
37 and 39),
GRANTING LEAVE TO
AMEND AND SETTING
CASE MANAGEMENT
CONFERENCE

    Plaintiff Jack A. Nissim asserts various mortgage-related claims against Defendants Wells Fargo Bank, N.A. and First American Title Company.[1]  Wells Fargo and First American move to dismiss Plaintiff's first amended complaint (1AC).  Plaintiff opposes their motions.  The Court took the motions under submission on the papers.  Having considered the arguments presented by the parties, the Court GRANTS the motions to dismiss and GRANTS Plaintiff leave to amend.

---

   [1] Plaintiff has voluntarily dismissed his claims against Defendants Atlantic Bancorp and Nicholas Dudum.

United States District Court
For the Northern District of California

BACKGROUND

I.   Facts

The following summary is taken from the 1AC and certain documents of which the Court takes judicial notice.[2]

In December 2004, Plaintiff entered into a loan transaction with Wells Fargo for the purchase of property located at 1438 28th Avenue in San Francisco, California.  1AC ¶ 15.  Plaintiff originally sought a loan with a fixed interest rate but was induced into entering into a loan with an adjustable interest rate based on promises that Plaintiff could later refinance the property with a fixed interest rate.  Id.  The loan included a penalty for early refinancing if he refinanced the property within three years.  Id.

In approximately December 2005, Plaintiff was assisted by Atlantic Bancorp, a real estate broker, and its representative, Dudum, in investigating loan options to purchase property in New Mexico.  Id. at ¶¶ 16, 45.

"Plaintiff was making regular mortgage payments under his original loan when he began receiving statements with higher payment amounts."  1AC ¶ 53.  Specifically, in approximately March 2006, when Plaintiff received his monthly mortgage bill, he "was completely shocked" to notice that the payment amount had

---

[2] Wells Fargo and First American ask, and Plaintiff does not oppose, that the Court take judicial notice of (1) the 2005 loan agreement with Plaintiff's purported signature, to which the 1AC refers; (2) recorded documents associated with the foreclosure sale, including the deed of trust, notice of default, substitution of trustee and notice of trustee's sale; and (3) documents that show that World Savings Bank became Wachovia Mortgage, FSB and then subsequently merged into Wells Fargo Bank, N.A.  The Court GRANTS Defendants' request.

United States District Court
For the Northern District of California

increased and that the "total amount due on the loan was much
higher since it was inflated with penalties." Id. at ¶ 17.  "At
this moment, Plaintiff discovered that instead of merely exploring
financing options for property in New Mexico, Atlantic Bancorp and
Dudum had actually refinanced Plaintiff's Property without his
knowledge."  Id.  "The refinance loan was with World Savings Bank,
F.S.B.," predecessor-in-interest to Wells Fargo.  Id. at ¶ 21.
See also RJN, Ex. A (copy of an Adjustable Rate Mortgage Note
dated December 16, 2005).  Plaintiff alleges that Wells Fargo "is
believed to be the current owner of the loan at issue."  Id. at
¶ 7.

The "loan documents were signed and notarized using
Plaintiff's name, but Plaintiff never signed said documents" and
Atlantic Bancorp and Dudum "executed forged documents on
Plaintiff's behalf" for the refinancing.  1AC ¶¶ 34, 73.[3]
Although he alleges that he never signed the loan documents,
Plaintiff also alleges that he was "wrongfully induced" into
"entering into a refinancing agreement."  Id. at ¶ 64.  Plaintiff
further alleges that, although he had not signed the documents,
they "were apparently notarized" by First American's subsidiary,
Alliance Title Company.  Id. at ¶ 18.  He alleges that First
American, "as the parent corporation of Alliance Title Company,
insured the genuineness of the documents that were closed in

---

[3] Although in the 1AC Plaintiff specifically identifies
Atlantic Bancorp and Dudum as the ones who executed the forged
document on his behalf, in his opposition to Wells Fargo's motion
to dismiss, Plaintiff states that "the exact source of the forgery
is unknown."  Opp. to Wells Fargo's Mot. 9.

United States District Court
For the Northern District of California

escrow in the loan transaction between Plaintiff and Wells Fargo." Id. at ¶ 8.

The "terms of the new loan were worse than the original loan." Id. at ¶ 19. Specifically, the "principal and interest rate on the forged note was worse than the original note." Id. "The interest of the second loan [was] also excessive." Id. The monthly payments that he "was asked to make under the new loan were . . . less than the monthly interest accumulations." Id. "Paying this amount caused Plaintiff to amass arrears on every payment he made." Id. Further, he "was penalized for violating the early refinancing clause of his original loan." Id. at ¶ 18.

The "actual terms of the 'forged note'" were "concealed from and never released to Plaintiff." Id. at ¶ 19. Nevertheless, Plaintiff tried to "arrange . . . terms that would have been acceptable and was unable to do so." Id.

When Plaintiff realized "that loan refinancing documents had been forged" in 2006, he "brought suit immediately," asserting the same causes of action as in the instant case. Id. at ¶ 25. "This original lawsuit was filed in 2006." Id.[4] That suit "was removed to Bankruptcy court where it resided for some time until it was dismissed without prejudice when the Bankruptcy was dismissed." Id. Plaintiff does not allege when the case was dismissed, but asserts that he "re-filed in a timely fashion." Id.

On November 1, 2011, NDEX West, as agent for the beneficiary, Wells Fargo, recorded a notice of default and election to sell,

---

[4] However, in his opposition to Wells Fargo's first motion to dismiss, Plaintiff states that he brought the suit in state court in 2007. Opp. to Wells Fargo Mot. at 8.

United States District Court
For the Northern District of California

stating that Plaintiff was in default of the December 2005 note. RJN, Ex. H.

On December 5, 2011, a substitution of trustee was recorded, substituting NDEX West in place of the original trustee.  RJN, Ex. I.

On January 31, 2012, NDEX West recorded a notice of trustee's sale, stating that the property would be sold at a trustee's sale on February 22, 2012 at 2:00 p.m.  RJN, Ex. J.

Plaintiff further alleges that, on February 22, 2012, his house was foreclosed on and his "property was sold at a trustee's sale."  1AC ¶ 29.  However, elsewhere in the 1AC, Plaintiff suggests that the trustee's sale has not yet taken place: Plaintiff alleges that "Defendants are now seeking to wrongfully foreclose on Plaintiff's Property" and that they "should be precluded from  . . . selling Plaintiff's Property at a trustee's sale."  Id. at ¶ 58.  See also Opp. to First American Mot. 7 ("at this point there has been no completed foreclosure sale").

II.  Procedural history

Plaintiff initiated this case on February 7, 2012 in San Francisco Superior Court, naming Wells Fargo as the only Defendant.  On March 9, 2012, Wells Fargo removed the action to federal court.  Docket No. 1.

On March 16, 2012, Wells Fargo filed a motion to dismiss Plaintiff's complaint.  Docket No. 6.

On April 6, 2012, Plaintiff filed his 1AC, adding as Defendants First American, Atlantic Bancorp and Dudum.  Docket No. 11.  The 1AC asserts five claims against all Defendants: (1) quiet title; (2) reformation of contract; (3) wrongful foreclosure in

violation of California Civil Code § 2924, <u>et seq.</u>; (4) slander of title; and (5) equitable indemnity.

On April 20, 2012, Wells Fargo filed its first motion to dismiss the 1AC.  Docket No. 17.

On May 2, 2012, the Court found the motion to dismiss the original complaint to be moot.  Docket No. 23.

After the parties stipulated twice to continue the hearing on Wells Fargo's motion to dismiss and the case management conference, Docket Nos. 26, 30, the Court vacated the hearing and conference to be reset if appropriate and directed the parties to participate in alternative dispute resolution (ADR) with the assistance of the Court's ADR Unit, Docket No. 31.

On November 7, 2012, the court-appointed mediator filed a certificate stating that the mediation process was complete and that the parties had not reached a settlement.  Docket No. 36.

On November 28, 2012, First American filed a motion to dismiss the 1AC, and Wells Fargo filed a second motion to dismiss the 1AC.  Docket Nos. 37 and 39.

On November 30, 2012, the Court issued an order addressing the newly filed motions to dismiss and service upon Atlantic Bancorp and Dudum.  Docket No. 42.  In that order, the Court noted that Wells Fargo's first motion to dismiss was fully briefed and that further briefing on Wells Fargo's second motion was not required, and vacated the briefing schedule on that motion.  The Court maintained the briefing schedule on First American's motion and stated that Plaintiff need not repeat the same arguments already made in opposition to Wells Fargo's first motion.  The

**United States District Court**
For the Northern District of California

Court also directed Plaintiff to file proof of timely service upon Atlantic Bancorp or a motion for extension of time for service.

On December 12, 2012, Plaintiff filed a notice of voluntary dismissal of Atlantic Bancorp and Dudum, which this Court granted on December 13, 2012.  See Docket Nos. 43 and 45.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

A statute of limitations defense may be raised by a motion to dismiss if the running of the relevant statute of limitations is apparent on the face of the complaint.  Ledesma v. Jack Stewart Produce, Inc., 816 F.2d 482, 484 n.1 (9th Cir. 1987).  When a motion to dismiss is based on the running of a statute of limitations, the motion can be granted "only if the assertions of the complaint, read with the required liberality, would not permit

the plaintiff to prove that the statute was tolled." <u>Jablon v.</u>
<u>Dean Witter & Co.</u>, 614 F.2d 677, 682 (9th Cir. 1980) (citation
omitted).

When granting a motion to dismiss, the court is generally
required to grant the plaintiff leave to amend, even if no request
to amend the pleading was made, unless amendment would be futile.
<u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911
F.2d 242, 246-47 (9th Cir. 1990).  In determining whether
amendment would be futile, the court examines whether the
complaint could be amended to cure the defect requiring dismissal
"without contradicting any of the allegations of [the] original
complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th
Cir. 1990).

DISCUSSION

I.   Liability of First American

First American contends that Plaintiff has not properly plead
any basis for imposing liability upon it.  Plaintiff responds that
he alleged that First American "insured the genuineness of the
documents that were closed in escrow in the alleged loan refinance
transaction between Plaintiff and Wells Fargo," and that he
specifically alleged "the wrongdoing of the notary since that
individual declared under penalty of perjury that the forged
promissory note and deed of trust were signed by Plaintiff in
their presence when in fact they were not."  Opp. to First
American Mot. 6.

As First American points out, in the 1AC, Plaintiff alleges
that it can be held liable because it is "the parent corporation
of Alliance Title Company" and Alliance Title Company is its

United States District Court
For the Northern District of California

8

**United States District Court**
For the Northern District of California

1 subsidiary.  Id. at ¶¶ 8, 18.  Plaintiff does not make any

2 additional allegations about First American.

3        "It is a general principle of corporate law deeply 'ingrained

4 in our economic and legal systems' that a parent corporation (so-

5 called because of control through ownership of another

6 corporation's stock) is not liable for the acts of its

7 subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998)

8 (quoting Douglas & Shanks, Insulation from Liability Through

9 Subsidiary Corporations, 39 Yale L.J. 193 (1929)).  However,

10 California courts may nonetheless pierce the corporate veil and

11 impose alter ego liability where a subsidiary and the parent are

12 "not really separate entities" and where they find "(1) that there

13 is such unity of interest and ownership that the separate

14 personalities [of the two entities] no longer exist and (2) that

15 failure to disregard [their separate identities] would result in

16 fraud or injustice." Doe v. Unocal Corp., 248 F.3d 915, 926 (9th

17 Cir. 2001) (internal quotation marks and citations omitted,

18 brackets in original).  "The first prong of this test has

19 alternately been stated as requiring a showing that the parent

20 controls the subsidiary 'to such a degree as to render the latter

21 the mere instrumentality of the former.'" Id. (citation omitted);

22 see also Holak v. Kmart Corp., 2012 U.S. Dist. LEXIS 176331, at

23 *10-11 (E.D. Cal.) (granting leave to amend to allege "sufficient

24 facts to give rise to a plausible basis for piercing the corporate

25 veil").

26        Thus, simply alleging that First American is the parent

27 company of Alliance Title Company, its subsidiary, is insufficient

28 to plead a basis for liability against First American.

Further, as First American argues, Plaintiff has not alleged sufficiently any breach of duty by the notary.  Although Plaintiff alleges that his signature on the documents was forged, Plaintiff has not plead that the notary knew or had any reason to know this or that the notary failed to verify the identity of the signer.

Accordingly, the Court GRANTS First American's motion to dismiss Plaintiff's claims against it.  Plaintiff is granted leave to amend to remedy these deficiencies identified above.

II.   Quiet Title

"The purpose of a quiet title action is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to." Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 974 (N.D. Cal. 2010) (internal quotation marks and citations omitted).  A quiet title action must include in a verified complaint: "(1) a description of the property in question; (2) the basis for plaintiff's title; and (3) the adverse claims to plaintiff's title." Ananiev v. Aurora Loan Servs., LLC, 2012 U.S. Dist. LEXIS 132489, at *9-10 (N.D. Cal.); Cal. Civ. Proc. Code § 760.020.

"In order to satisfy the second requirement, plaintiff must allege that he has discharged his debt, regardless to whom it is owed." Id. (citing Kelley v. Mort. Elec. Registration Sys., Inc., 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)); see also Miller v. Provost, 26 Cal. App. 4th 1703, 1707 (1994) ("This rule was based on the equitable principle that a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee."). "That is, to state a claim, Plaintiff must allege a

valid and viable offer of tender." Sowinski v. Wells Fargo Bank, N.A., 2012 U.S. Dist. LEXIS 168198, at *4-5 (N.D. Cal.) (citing Chancellor v. OneWest Bank, 2012 U.S. Dist. LEXIS 125249, at *10 (N.D. Cal.)).

Defendants argue that Plaintiff has failed to state a claim to quiet title because he has failed to allege tender sufficiently.  In the 1AC, Plaintiff has plead that he "hereby offers to tender any amount proper and necessary to effectuate rescission of the void contract."  1AC ¶ 28.  Plaintiff argues that this is a sufficient allegation of tender because his complaint attacks the validity of the underlying debt, he is not in default under the forged note and it would be inequitable to require him to tender the full amount of his indebtedness. Plaintiff also argues that he received nothing under the 2005 forged note and thus "has nothing to tender in exchange for reformation or rescission of the forged note."

Plaintiff appears to base his arguments that he should not be required to make a full tender on the understanding that he seeks to restore the 2004 mortgage agreement and challenges only the validity of the forged refinancing agreement.  However, in his quiet title claim, Plaintiff seeks to remove all clouds from his title and requests a determination that he holds title to the property, free from all claims of Defendants, apparently including the original promissory note and deed of trust.  See 1AC ¶¶ 36, 37 ("Plaintiff seeks to quiet title against the claims of Defendants, and each of them. . . . Defendants and each of them, has no valid, lawful, or equitable title, estate, lien or interest in the Property.  Defendants do not . . . own or have a legal interest in

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

the pertinent notes secured by the corresponding deeds of trust."). Without an allegation that he has paid the full amount of the original loan, Plaintiff has not stated a claim to quiet title.

In addition, Plaintiff has not alleged any adverse claim to his title that is held or asserted by First American that creates a present controversy between him and First American to be resolved by a judgment quieting title. See <u>Friends of the Trails v. Blasius</u>, 78 Cal. App. 4th 810, 831 (2000) ("there is no entitlement to a judgment quieting title insofar as there is no antagonistic property interest").

Defendants also argue that this claim is time-barred because Plaintiff failed to bring it within three years of December 2005 when the loan refinancing papers were filed. "Since there is no statute of limitations governing quiet title actions as such, it is ordinarily necessary to refer to the underlying theory of relief to determine which statute applies." <u>Muktarian v. Barmby</u>, 63 Cal. 2d 558, 560 (1965). In the case of fraud or mistake, the statute of limitations is three years after the fraud or mistake has been discovered. Cal. Civ. Proc. Code § 338(d). In actions based on rescission of a contract in writing where the ground is fraud or mistake, the statute of limitations is four years after the fraud or mistake has been discovered. Cal. Civ. Proc. Code § 337(3). "However, 'no statute of limitations runs against a plaintiff seeking to quiet title while he is in possession of the property.'" <u>Espinoza v. Recontrust Co., N.A.</u>, 2010 U.S. Dist. LEXIS 71337, at *16. (S.D. Cal.) (quoting <u>Muktarian</u>, 63 Cal. 2d at 560). Thus, because Plaintiff is still in possession of the

United States District Court
For the Northern District of California

1  property, his quiet title claim is not barred by the statute of

2  limitations.

3      Accordingly, the Court GRANTS Defendants' motions to dismiss

4  Plaintiff's claim seeking to quiet title.  Plaintiff is granted

5  leave to amend to address the deficiencies identified above.

6  III. Reformation of Contract

7      In this claim, Plaintiff contends that, because the

8  "refinancing loan was fabricated through the forgery of

9  Plaintiff's signature" and the only real agreement that he entered

10  into was the original mortgage signed in 2004, his loan "should be

11  reformed to reflect the terms of the original obligation and not

12  the terms of the refinancing agreement."  1AC ¶ 41.

13      Wells Fargo argues that Plaintiff has failed to plead any

14  element of a cause of action for reformation of contract.  "To

15  state a claim for reformation under California law, a plaintiff

16  must plead that 'by reason of fraud practiced by one of the

17  parties, or of the mutual mistake of the parties or of a mistake

18  of one of them, which the other at the time knew or suspected,

19  there were omitted from the instrument certain material terms and

20  conditions.  In other words, that the language of the writing

21  failed, for some reason, to express the intention of the

22  parties.'"  Leisher v. Wachovia Mortg., Inc., 2011 U.S. Dist.

23  LEXIS 3037 (S.D. Cal.) (quoting Pascoe v. Morrison, 219 Cal. 54,

24  56 (1933); see also Cal. Civ. Code § 3399 (setting forth when a

25  contract may be revised).  "A complaint for the reformation of a

26  contract should allege what the real agreement was, what the

27  agreement as reduced to writing was, and where the writing fails

28  to embody the real agreement.  It is also necessary to aver facts

showing how the mistake was made, whose mistake it was and what brought it about, so that mutuality may appear." Lane v. Davis, 172 Cal. App. 2d 302, 309 (1959) (quoting Johnson v. Sun Realty Co., 138 Cal. App. 296, 300 (1934)). "Basic to a cause of action for reformation is a showing of a definite intention or agreement on which the minds of the parties had met which pre-existed and conflicted with the instrument in question." Appalachian Ins. Co. v. McDonnell Douglas Corp., 214 Cal. App. 3d 1, 21 (1989) (internal quotation marks, formatting and citation omitted).

Wells Fargo argues that Plaintiff has not plead sufficiently that the parties actually entered into a contract that the 2005 agreement failed to accurately reflect, or what the terms of such contract was. Wells Fargo claims that Plaintiff instead asks "the Court to make an entirely new contract reflecting the terms of the 2004, preferred loan agreement." Wells Fargo Mot. 8. Wells Fargo is correct that Plaintiff has not alleged that the parties actually had a meeting of the minds in 2005 that the purportedly fraudulent agreement fails to reflect.

First American also contends that it is not properly named as a Defendant for this claim. In the 1AC, Plaintiff has not alleged that First American is a party to any contract or agreement with him. Thus, Plaintiff has not identified any agreement that the Court could reform between him and First American.

Defendants also argue that reformation requires fraud or mistake, which Plaintiff has not plead sufficiently. In his opposition to Wells Fargo's motion to dismiss, Plaintiff states that he seeks reformation on the grounds of "a forgery, or presumably fraud," not mistake. Wells Fargo is correct that

United States District Court
For the Northern District of California

14

1  Plaintiff has not plead that it has directly engaged in any fraud

2  or forgery.

3       Further, Plaintiff has not properly plead an agency

4  relationship between Wells Fargo and Atlantic Bancorp, Dudum or

5  any others, such that their purported forgery or other malfeasance

6  could be imputed to Wells Fargo.  Plaintiff has only conclusorily

7  alleged that "each Defendants [sic] was acting as the agent,

8  servant, employee, partner, co-conspirator, and/or joint venture

9  of each remaining Defendants [sic]."  1AC ¶ 13.  Plaintiff is

10 required to make more than conclusory allegations, especially

11 "when normally, as a matter of law, a broker is the agent of the

12 borrower not the lender."  Abels v. Bank of Am., N.A., 2012 U.S.

13 Dist. LEXIS 28125, at *19 (N.D. Cal.) (citing Montoya v. McLeod,

14 176 Cal. App. 3d 57, 64 (1985)).

15      Plaintiff has also not plead sufficiently that Atlantic

16 Bancorp, Dudum, Alliance or First American acted with the

17 ostensible authority of Wells Fargo.  Under California law,

18 ostensible agency exists "when the principal intentionally, or by

19 want of ordinary care, causes a third person to believe another to

20 be his agent who is not really employed by him."  Cal. Civ. Code

21 § 2300.  Thus, Plaintiff must plead that Wells Fargo itself has

22 done something that caused Plaintiff to believe that these others

23 were its agents.  The only action taken by Wells Fargo that

24 Plaintiff points to in support of his argument regarding

25 ostensible authority is that Wells Fargo has recently instituted

26 foreclosure proceedings to enforce the 2005 deed of trust and

27 promissory note.  This does not suggest that the actions of

28

Atlantic, Dudum or Alliance Title in 2005 were taken on behalf of Wells Fargo.

In addition, Defendants argue that, on the face of the 1AC, this claim is barred by the four year statute of limitations for the rescission of a written contract.  Cal. Code Civ. Proc. § 337(3).  To the extent that Defendants state that the statute began running in December 2005, the date of the execution of the forged contract, this is incorrect.  Instead, the four year time period began to run in March 2006, when Plaintiff alleges that he discovered the fraud.  Id.  Nevertheless, because the action was not filed until February 2012, this claim is time-barred, unless the statute of limitations was tolled for at least twenty-three months.  Plaintiff contends that this claim was timely asserted because he brought it promptly after discovering Wells Fargo's claim of title and "again immediately after his original suit was dismissed without prejudice."  Opp. at 8.

"California equitably tolls the statute of limitations during the pendency of an earlier action if there is 'timely notice, and lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff.'"  Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983).  California courts have found that three requirements must be present for this rule of equitable tolling may apply: "(1) the plaintiff must have diligently pursued his or her claim; (2) the fact that the plaintiff is left without a judicial forum for resolution of the claim must be attributable to forces outside the control of the plaintiff; and (3) the defendant must not be prejudiced by application of the doctrine (which is normally not a

United States District Court
For the Northern District of California

factor since the defendant will have had notice of the first action)." Hull v. Central Pathology Serv. Med. Clinic, 28 Cal. App. 4th 1328, 1336 (1994). See also Prettyman v. City of San Diego Police Dep't, 2012 U.S. Dist. LEXIS 38461, at *12 (S.D. Cal.) (equitable tolling may apply "to prevent unjust technical forfeiture of certain claims") (internal quotations omitted). While this rule ordinarily does not allow a party to "deduct the time consumed by the pendency of an action if it was later dismissed without prejudice," Prettyman, 2012 U.S. Dist. LEXIS 38461, at *12-13, that bar normally applies to prevent the voluntary dismissal of actions by the plaintiff, because of courts' concern that "an indefinite extension of the statutory period -- through successive filings and dismissals -- might well result," Wood v. Elling Corp., 20 Cal. 353, 359-60 (1977).

Here, Plaintiff has alleged that his earlier action was dismissed without prejudice by the bankruptcy court when it dismissed his bankruptcy case, not that he voluntarily dismissed the action. However, Plaintiff has not plead the dates on which he filed the earlier action or on which the bankruptcy court dismissed it, and has not alleged facts that could support a finding that Defendants would not be prejudiced by application of this doctrine. Accordingly, Plaintiff has not sufficiently plead facts to establish that the statute was tolled for a duration sufficient to have made his claims timely.

United States District Court
For the Northern District of California

1    Accordingly, the Court grants Defendants' motion to dismiss

2  this claim.[5]  Plaintiff is granted leave to amend to remedy the

3  deficiencies identified above.  He must plead the dates on which

4  he filed the state court action and on which the bankruptcy court

5  dismissed it, and identify the case numbers and courts for those

6  proceedings.

7  IV.  Wrongful Foreclosure

8    Plaintiff alleges that Defendants' foreclosure of his

9  property violated California Civil Code section 2924, because the

10 notice of default did not specify the accurate amount of arrears

11 due to its inclusion of penalties and fees related to the forged

12 refinancing agreement.

13   Defendants argue that Plaintiff's claim for wrongful

14 foreclosure is insufficiently plead for several reasons.  First,

15 Defendants argue that Plaintiff has not "plead with certainty the

16 first essential element of a wrongful foreclosure sale, i.e., a

17 completed trustee's sale."  First American Mot. 14; see also Wells

18 Fargo Mot. 8.  Plaintiff responds that a completed trustee's sale

19 is not required for this claim because the "primary remedy" sought

20 for this claim is injunctive relief to "prevent the wrongful

21 foreclosure" of the property.  Plaintiff fails to provide any

22 authority in support of his argument.  However, in addition to

23 seeking to stop the foreclosure process, Plaintiff requests that

24

25 _____

26   [5] The Court notes that, in his opposition to Wells Fargo's
   motion to dismiss, Plaintiff refers several times to rescission of
27 the 2005 document, as opposed to reformation.  See, e.g., Opp. to
   Wells Fargo Mot. 6.  In amending his complaint, Plaintiff may
28 plead a claim for rescission or cancellation of the 2005 contract
   instead of attempting to re-plead his claim for reformation.

18

United States District Court
For the Northern District of California

1  he be awarded "actual damages" that he suffered from the

2  purportedly wrongful foreclosure.  1AC ¶ 59.

3      In the 1AC, Plaintiff has made contradictory allegations both

4  that a trustee's sale has been completed and that the property is

5  "in danger of being sold" but has not yet been sold.  1AC ¶¶ 22,

6  29; see also id. at ¶ 58 ("Defendants are now seeking to

7  wrongfully foreclose on Plaintiff's Property . . . Defendants

8  should be precluded from foreclosing on Plaintiff's Property and

9  from selling Plaintiff's Property at a trustee's sale.").  In his

10 responses to the motions to dismiss, Plaintiff consistently

11 asserts that "Plaintiff's Property has not yet been sold at a

12 scheduled trustee's sale."  Opp. to First American Mot. 7.

13     Under California law, a "lender or foreclosure trustee may

14 only be liable to the mortgagor or trustor for wrongful

15 foreclosure if the property was wrongfully or illegally sold under

16 a power of sale contained in a mortgage or deed of trust."

17 Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 961

18 (N.D. Cal. 2010) (citing Munger v. Moore, 11 Cal. App. 3d 1, 7

19 (1970).  See also Permito v. Wells Fargo Bank, N.A., 2012 U.S.

20 Dist. LEXIS 55977, at *9 (N.D. Cal.) ("The first element for a

21 wrongful foreclosure claim is that the property was illegally or

22 fraudulently sold under a power of sale in a deed of trust.");

23 Chancellor v. OneWest Bank, 2012 U.S. Dist. LEXIS 71992, at *24-26

24 (N.D. Cal.) (dismissing without prejudice a wrongful foreclosure

25 claim as "premature" where the plaintiff alleged that a

26 foreclosure sale was scheduled but not that it had already

27 occurred).  Accordingly, if a trustee's sale has not yet taken

28

1  place, Plaintiff's claim for damages as a result of the wrongful
2  foreclosure is premature.

3      Defendants also argue that Plaintiff has not specified the
4  specific part of section 2924 that he asserts Defendants have
5  violated.  Plaintiff responds that he "specifically identifies
6  that Defendant violated Civil Code § 2924 for not recording a
7  Notice of Default with accurate amounts of arrears and as such,
8  the nature of the breach was not known to the Plaintiff."  Opp. to
9  Wells Fargo Mot. to Dismiss 12.  He acknowledges that the 1AC
10 "fails to specifically identify the actual section" that was
11 purportedly violated but avers that "this deficiency can easily be
12 cured by allowing leave to amend in order to state that Defendant
13 specifically violated Civil Code § 2924(a)(1)(C)."  Id.[6]

14     In addition, Defendants argue that Plaintiff's wrongful
15 foreclosure claim fails because he has inadequately alleged tender
16 of the indebtedness.  Although tender may be required to set aside
17 a completed trustee's sale, if Plaintiff seeks equitable relief to
18 postpone or prevent the sale, many "courts have refused to extend
19 the tender rule to cases where the foreclosure sale has not yet
20 occurred."  Tang v. Bank of Am., N.A., 2012 U.S. Dist. LEXIS
21 38642, at *14 (C.D. Cal.); see also Howl v. Bank of Am., N.A.,
22 2011 U.S. Dist. LEXIS 91698, at *5 (N.D. Cal.); Silva-Pearson v.
23 BAC Home Loans Servicing, LP, 2011 U.S. Dist. LEXIS 71639, at *5-6

24 _____

25     [6] California Civil Code section 2924(a)(1)(C) requires that
26 the notice of default include a "statement setting forth the
   nature of each breach actually known to the beneficiary and of his
   or her election to sell or cause to be sold the property to
27 satisfy that obligation and any other obligation secured by the
   deed of trust or mortgage that is in default."
28

United States District Court
For the Northern District of California

(N.D. Cal.); <u>Dubin v. BAC Home Loans Servicing</u>, 2011 U.S. Dist. LEXIS 19921, at *7 (N.D. Cal.).

Where a foreclosure sale has taken place, without pleading tender or the ability to offer tender, a plaintiff cannot state a cause of action challenging a foreclosure.  <u>Karlsen v. Am. Savings & Loan Ass'n</u>, 15 Cal. App. 3d 112, 117 (1971) (citing <u>Copsey v. Sacramento Bank</u>, 133 Cal. 659, 662 (1901)); <u>Smith v. Wachovia</u>, 2009 U.S. Dist. LEXIS 57553, at *8 (N.D. Cal.) (citing <u>Karlsen</u>, 15 Cal. App. 3d at 117).  "An exception to the tender rule may apply, however, where it would be inequitable to require tender."  <u>Bowe v. Am. Mortg. Network, Inc.</u>, 2012 U.S. Dist. LEXIS 80044 (C.D. Cal.) (citing <u>Onofrio v. Rice</u>, 55 Cal. App. 4th 413, 424 (1997)).  Further, "if the action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmative of the debt."  <u>Onofrio</u>, 55 Cal. App. 4th at 424 (citation omitted).  On this basis, at least one court in this district has declined to impose a tender requirement when the plaintiffs challenged the validity of the underlying debt, "by alleging forgery and fraud in the consummation of the underlying security."  <u>See</u> <u>Kurek v. America's Wholesale Lender</u>, 2010 U.S. Dist. LEXIS 75401, at *1-2 (N.D. Cal.).  Similarly, here, if a foreclosure sale has taken place, it would be inequitable to require Plaintiff to tender the full amount secured by the 2005 note because he alleges that he never agreed to that debt and his name was forged on the refinancing papers.

Although full tender is not required, under the circumstances present here, Plaintiff's current allegation of tender is insufficient.  Plaintiff does not challenge the validity of the

United States District Court
For the Northern District of California

debt incurred through the 2004 mortgage agreement and instead seeks rescission of the 2005 agreement in order to have the 2004 agreement reinstated.  The tender rule "is premised upon the equitable maxim that a court of equity will not order that a useless act be performed." Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d 575, 579 (1984).  The rationale is that, "without tender, a plaintiff cannot redeem the property and so unwinding a completed foreclosure sale would be 'useless.'" Tang v. Bank of Am., N.A., 2012 U.S. Dist. LEXIS 38642 (C.D. Cal.).  Plaintiff has alleged an offer "to tender any amount proper and necessary to effectuate rescission of the void contract." 1AC ¶ 28.  Plaintiff must at least also allege an offer to pay the amounts due for the monthly payments under the original loan, including any fees and interest incurred due to the late payment.  If Plaintiff is able to make such an allegation truthfully, it appears that it would not be useless to set aside a foreclosure sale and reinstate the original loan.

Accordingly, the Court grants Defendants' motions to dismiss the claim for wrongful foreclosure.  Plaintiff is granted leave to amend to plead whether or not a trustee's sale has been completed, to identify the particular subsection of section 2924 that he alleges Defendants have violated and, if a trustee's sale has taken place, to plead tender adequately.

V.   Slander of Title

Plaintiff alleges that "the Defendants have recorded a notice of default on a void note which was manufactured by the Defendants' own wrongdoing" and that, as a result, he has suffered

United States District Court
For the Northern District of California

1  damage to his credit, an inflated premium, accrual of arreages,

2  attorneys' fees and foreclosure.  1AC ¶¶ 64-69.

3      The elements of a claim for slander of title under California

4  law are (1) publication, (2) falsity, (3) absence of privilege and

5  (4) "'disparagement of another's land which is relied upon by a

6  third party and which results in a pecuniary loss.'"  Smith v.

7  Commonwealth Land Title Ins. Co., 177 Cal. App. 3d 625, 630 (1986)

8  (quoting Appel v. Burman, 159 Cal. App. 3d 1209, 1214 (1984)).

9  Because, under California law, the "mailing, publication, and

10 delivery of notices" required as part of the nonjudicial

11 foreclosure process are considered privileged communications, see

12 Cal. Civ. Code § 2924(d)(1), Plaintiffs must also allege that the

13 recording was done with malice, that is, it "was motivated by

14 hatred or ill will" or "the defendant lacked reasonable grounds

15 for belief in the truth of the publication and therefore acted in

16 reckless disregard of the plaintiff's rights."  Kachlon v.

17 Markowitz, 168 Cal. App. 4th 316, 336 (2008) (internal quotations

18 omitted).

19     Defendants argue that Plaintiff has not sufficiently alleged

20 that he was damaged by any false publication because "the

21 proximate cause of loss is due solely to Plaintiff's default on

22 the loan."  Wells Fargo Mot. 10; First American Mot. 16.  However,

23 Plaintiff has alleged that the second forged agreement had

24 significantly less favorable terms than the original loan, which

25 caused his monthly payments to increase, and that "his inability

26 to make monthly mortgage payments, as well as the total amount of

27 arrearages, was a direct result of the forged second note and the

28 false [notice of default]."  1AC ¶¶ 17, 19, 69.  Thus, Plaintiff

1   has alleged adequately that he suffered a loss because of the

2   purported fraud and void note.

3          However, Plaintiff has made only conclusory allegations that

4   Wells Fargo and First American acted with malice.  Plaintiff has

5   specifically alleged that Atlantic Bancorp and Dudum--against whom

6   Plaintiff is no longer pursuing claims--forged his signature.  He

7   has not alleged that either Wells Fargo or First American knew of

8   the forgery or that they acted out of hatred or ill will toward

9   him.  Although Plaintiff asserts in his response to First

10  American's motion that "the notary authenticating Plaintiff's

11  forged signatures knew that the signatures were not genuine," Opp.

12  to First American Mot. 7-8, Plaintiff did not allege in the 1AC

13  that the notary had such knowledge.  Further, as explained above,

14  Plaintiff has not alleged sufficiently any basis to assign

15  liability to First American for the notary's actions.

16  Accordingly, Plaintiff has failed to allege this claim adequately

17  against either remaining Defendant.

18         Thus, the Court GRANTS Defendants' motions to dismiss this

19  claim.  Plaintiff is granted leave to remedy the deficiencies

20  identified above.

21  VI.  Equitable Indemnity

22         Both Defendants argue that Plaintiff's claim for equitable

23  indemnification is misplaced because that doctrine applies only to

24  apportion liability among various defendants who are jointly and

25  severally liable to a plaintiff.

26         Plaintiff did not respond to Wells Fargo's argument.

27  Accordingly, the Court GRANTS Wells Fargo's motion to dismiss this

28  claim.

United States District Court
For the Northern District of California

In his opposition to First American's motion, Plaintiff states that he "seeks equitable indemnity from Defendant First American for their alleged misconduct in creating the initial controversy." Opp. to First American Mot. 8. He points to his allegations that, "as a result of the forged documents, Plaintiff suffers from 'overcharges of fees, incurred attorneys' fees, etc. . .'" and states that, to the extent "Wells Fargo seeks such sums from Plaintiff, First American is liable for equitable indemnity." Id.

"At the heart of the doctrine of equitable indemnity is apportionment based on fault. At a minimum equitable indemnity requires a determination of fault on the part of the alleged indemnitor." Heritage Oaks Partners v. First American Title Ins. Co., 155 Cal. App. 4th 339, 348 (2007) (internal quotation marks, citations and formatting omitted). "One point stands clear: there can be no indemnity without liability. In other words, unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity." Id. (internal quotation marks, citations and formatting omitted).

Thus, to state a cause of action for equitable indemnity, Plaintiff must allege that he was jointly and severally liable with First American to Wells Fargo. Plaintiff has not done so. Accordingly, the Court GRANTS, with leave to amend, First American's motion to dismiss this claim.

CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motions to dismiss (Docket Nos. 17, 37 and 39). Within fourteen

days of the date of this Order, Plaintiff may file a second
amended complaint to remedy the deficiencies identified above. He
may not add further claims or allegations not authorized by this
Order.

If Plaintiff files a second amended complaint, Defendants
shall respond to it within fourteen days after it is filed. If
Defendants move to dismiss the second amended complaint, to the
extent possible, Defendants, who share counsel, shall file a joint
motion. Plaintiff shall respond to the motion within fourteen
days after it is filed. Defendants' reply, if necessary, shall be
due seven days thereafter. Any motion to dismiss will be decided
on the papers.

The Court sets a case management conference for April 17,
2013 at 2:00 p.m.

IT IS SO ORDERED.

Dated: 1/17/2013

CLAUDIA WILKEN
United States District Judge