IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK A. NISSIM,<br><br>    Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK, N.A.; FIRST AMERICAN TITLE COMPANY; ATLANTIC BANCORP; and NICHOLAS DUDUM,<br><br>    Defendants.<br>_____/ | No. C 12-1201 CW<br><br>ORDER GRANTING WELLS FARGO'S MOTION TO DISMISS (Docket No. 49) |

Plaintiff Jack A. Nissim asserts various mortgage-related claims against Defendant Wells Fargo Bank, N.A.[1] Wells Fargo moves to dismiss Plaintiff's second amended complaint (2AC). Plaintiff opposes the motion. Having considered the papers filed by the parties, the Court GRANTS Wells Fargo's motion.

BACKGROUND

The following facts are taken from the 2AC and certain documents of which the Court takes judicial notice.[2]

---

[1] Plaintiff voluntarily dismissed his claims against Defendants Atlantic Bancorp and Nicholas Dudum. Docket No. 43. On January 17, 2013, the Court dismissed Plaintiff's claims against Defendant First Atlantic Title Company and granted Plaintiff leave to amend to remedy the deficiencies identified by the Court. Docket No. 47. On January 31, 2013, Plaintiff filed his amended pleading, naming only Wells Fargo as a Defendant. Docket No. 48.

[2] With its motion and reply, Wells Fargo has asked that the Court take judicial notice of various documents, including documents related to Plaintiff's mortgage, his prior related state court action and his bankruptcy cases. Plaintiff does not oppose or object to Wells Fargo's requests and the Court grants them. The Court also takes judicial notice of the dockets of the three bankruptcy cases that Plaintiff has filed in this district.

In approximately December 2004, Plaintiff entered into a loan transaction with Wells Fargo for the purchase of property located at 1438 28th Avenue in San Francisco, California. 2AC ¶ 12. Plaintiff originally sought a loan with a fixed interest rate but was induced to enter a loan agreement with an adjustable interest rate based on promises that he could later refinance the property with a fixed interest rate. Id. The loan included a penalty for early refinancing if he refinanced the property within three years. Id.

In approximately December 2005, Plaintiff was assisted by Atlantic Bancorp, a real estate broker, and its representative, Dudum, in investigating loan options to purchase property in New Mexico. Id. at ¶ 13. Dudum represented to Plaintiff that he and Atlantic Bancorp were agents of Wells Fargo and that they could refinance his loan with Wells Fargo to obtain money to purchase the New Mexico property. Id. Plaintiff told Atlantic that he could not refinance his loan with Wells Fargo because of the early refinancing penalty. Id. In response, Atlantic told him that, as an agent of Wells Fargo, it could speak with Wells Fargo about an early refinancing. Id. Plaintiff did not speak to anyone at Atlantic about this any further. Id.

"Plaintiff was making regular mortgage payments under his original loan when he began receiving statements with higher payment amounts." 2AC ¶ 34. Specifically, in approximately March 2006, when Plaintiff received his monthly mortgage bill, he "was understandably shocked" to notice that the payment amount had increased and that the "total amount due on the loan was much higher." Id. at ¶ 14. "At this moment, Plaintiff discovered that

2

instead of merely exploring financing options for property in New Mexico, Atlantic Bancorp and Dudum, through Wells Fargo, had actually refinanced Plaintiff's Property without his knowledge." Id. Plaintiff alleges that Wells Fargo "is believed to be the current owner of the loan at issue." Id. at ¶ 7.

The "final loan documents were signed and notarized using Plaintiff's name, but Plaintiff never signed said documents." Id. at ¶ 27; see also id. at ¶ 15 ("escrow was closed and recorded without Plaintiff's knowledge or his signatures on any of the documents that appear to be notarized"). Plaintiff alleges that Atlantic Bancorp forged the documents for the refinancing. Id. at ¶ 41. He also alleges, upon information and belief, that Wells Fargo knew the refinance agreement was forged and that it participated in the forgery by authorizing its agent, Atlantic Bancorp, to forge the documents. Id. He also alleges that Wells Fargo "held a phony escrow which closed based on forged documents" and that he "never agreed to the terms of the loan, never saw or signed the loan documents, never showed up for escrow, and never authorized the refinancing of his Property." Id. at ¶ 11.

Although he alleges that he never signed the loan documents, Plaintiff also alleges that he was "wrongfully induced into" the refinancing agreement. Id. at ¶ 41.

The "terms of the new loan were worse than the original loan." Id. at ¶ 17. Specifically, the "principal and interest rate on the forged note was worse than the original note." Id. "The interest [on] the second loan [was] also excessive." Id. The monthly payments that he "was asked to make under the new loan were . . . less than the monthly interest accumulations." Id.

3

"Paying this amount caused Plaintiff to amass arrears on every payment he made." Id. Further, he "was penalized for violating the early refinancing clause of his original loan." Id. at ¶ 16. Plaintiff alleges that the unfavorable terms of the new loan are "strong evidence that the new loan was forged since no one would refinance into terms worse than their original loan terms." Id. at ¶ 17.

The "actual terms of the 'forged note'" were "concealed from and never released to Plaintiff." Id. at ¶ 18. "Nevertheless, Plaintiff attempted to arrange . . . terms that would have been acceptable and was unable to do so." Id.

In his first amended complaint (1AC), Plaintiff alleged that, when he realized "that loan refinancing documents had been forged" in 2006, he "brought suit immediately," asserting the same causes of action as in the instant case. 1AC ¶ 25. Plaintiff has removed all references to his state court case and bankruptcy proceedings from the 2AC.

On September 27, 2007, Plaintiff filed a complaint in San Francisco Superior Court against World Savings Bank, which is the predecessor in interest to Wells Fargo here, Dudum, Atlantic Bancorp, Cal State 9 Credit Union and others. 1RJN, Ex. K. In his complaint, Plaintiff alleged that Dudum and Atlantic Bancorp had first advised him to refinance his loan with World Savings but later advised him to enter into a second mortgage with Cal State 9 Credit Union and that it was the loan agreement with the latter that was forged. He also alleged that World Savings had overcharged him on the first loan, but did not allege that any mortgage agreement with World Savings had been forged.

4

On February 20, 2008, Plaintiff filed for bankruptcy in the Bankruptcy Court in the Northern District of California. Docket No. 1, In re Jack Albert Nissin, Pet. No. 08-30265 (N.D. Cal. Bankr. Ct.).

On October 1, 2008, the bankruptcy trustee removed the state court action to bankruptcy court. 1RJN, Ex. K; Docket No. 1, Nissim v. Cal. State 9 Credit Union, Adversary Proceeding No. 08-3115 (N.D. Cal. Bankr. Ct.).

On December 9, 2008, the bankruptcy court granted the trustee's petition to abandon the claims that were the subject of the state law action. Docket No. 82, In re Jack Albert Nissin, Pet. No. 08-30265.

On December 10, 2008, the bankruptcy trustee filed a notice of dismissal in the removed action, which stated, "[H]aving obtained an order authorizing her to abandon the claims set forth in this adversary proceeding, the trustee hereby dismisses this adversary proceeding without prejudice." 1RJN, Ex. M; Docket No. 7, Nissim v. Cal. State 9 Credit Union, Adversary Proceeding No. 08-3115.

On January 29, 2009, the bankruptcy court granted Plaintiff a discharge. Second Request for Judicial Notice (2RJN), Ex. B;[3] Docket No. 87, In re Jack Albert Nissin, Pet. No. 08-30265.

On November 1, 2011, NDEX West, as agent for Wells Fargo, the beneficiary of the deed of trust on the 28th Avenue property, recorded a notice of default and election to sell, stating that

---

[3] Wells Fargo appears to have inadvertently reversed Exhibits A and B to its 2RJN. The Court uses the lettering that appears in the request for judicial notice itself.

5

Plaintiff was in default of the December 2005 note.  First Request for Judicial Notice (1RJN), Ex. H.

On December 5, 2011, a substitution of trustee was recorded, substituting NDEX West in place of the original trustee.  1RJN, Ex. I.

On January 31, 2012, NDEX West recorded a notice of trustee's sale, stating that the property would be sold on February 22, 2012 at 2:00 p.m.  1RJN, Ex. J.

Plaintiff initiated this case on February 7, 2012 in San Francisco Superior Court, naming Wells Fargo as the only Defendant.  Docket No. 1.

On February 22, 2012, the same day for which the trustee's sale was set, Plaintiff filed his second bankruptcy petition. Docket No. 1, In re Jack Nissim, Pet. No. 12-30558 (N.D. Cal. Bankr. Ct.).  On March 9, 2012, this bankruptcy case was dismissed due to Plaintiff's failure to file various required documents, including his bankruptcy schedules.  Docket No. 8, In re Jack Nissim, Pet. No. 12-30558.

On March 9, 2012, Wells Fargo removed the instant action to federal court.  Docket No. 1.

On April 6, 2012, Plaintiff filed his 1AC, adding as Defendants First American, Atlantic Bancorp and Dudum.  Docket No. 11.  The 1AC asserted five claims against all Defendants: (1) quiet title; (2) reformation of contract; (3) wrongful foreclosure in violation of California Civil Code § 2924, et seq.; (4) slander of title; and (5) equitable indemnity.

On April 20, 2012, Wells Fargo filed its first motion to dismiss the 1AC.  Docket No. 17.

6

On April 23, 2012, Plaintiff filed his third bankruptcy petition. Docket No. 1, In re Jack Nissim, Pet. No. 12-31226 (N.D. Cal. Bankr. Ct.).

On June 14, 2012, the Chapter 7 Trustee filed a report of no distribution in Plaintiff's third bankruptcy case, certifying that his estate has been fully administered and that there were no assets available for distribution. June 14, 2012 Docket Entry, In re Jack Nissim, Pet. No. 12-31226.

On July 13, 2012, the United States Trustee filed a motion for denial of discharge in Plaintiff's third bankruptcy case, arguing that a debtor cannot receive a discharge under Chapter 7 if the debtor has previously obtained a discharge in a case commenced within eight years of the current case. Docket Nos. 17, 18, In re Jack Nissim, Pet. No. 12-31226. On August 7, 2012, the Bankruptcy Court granted the United States Trustee's unopposed motion and denied Plaintiff's discharge. Docket No. 24, In re Jack Nissim, Pet. No. 12-31226. The bankruptcy case remains open.

On November 28, 2012, First American filed a motion to dismiss the 1AC, and Wells Fargo filed a second motion to dismiss the 1AC. Docket Nos. 37 and 39.

On December 12, 2012, Plaintiff filed a notice of voluntary dismissal of the claims against Atlantic Bancorp and Dudum, which this Court granted on December 13, 2012. See Docket Nos. 43 and 45.

On January 17, 2013, the Court granted the motions to dismiss filed by First American and Wells Fargo and granted Plaintiff leave to amend. Docket No. 47.

7

On January 31, 2013, Plaintiff filed his 2AC. The 2AC asserts three claims against Wells Fargo: (1) quiet title; (2) wrongful foreclosure in violation of California Civil Code § 2924, et seq.; and (3) slander of title. Plaintiff alleges that his "Property has not been sold yet and he is still in possession of the Property." 2AC ¶ 22.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the

8

1 complaint could be amended to cure the defect requiring dismissal
2 "without contradicting any of the allegations of [the] original
3 complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th
4 Cir. 1990).

## DISCUSSION

6 Wells Fargo seeks to dismiss Plaintiff's 2AC in its entirety.
7 Wells Fargo argues that Plaintiff lacks standing to assert the
8 claims contained in the 2AC because he is currently in bankruptcy,
9 that his allegations are not plausible on their face and that he
10 is estopped from bringing these claims due to his failure to
11 schedule the claims in his first or third bankruptcy. Wells Fargo
12 also contends that Plaintiff has not sufficiently plead the
13 elements of any of his causes of action.

14 I. Standing

15 "Upon a declaration of bankruptcy, all of a petitioner's
16 property becomes the property of the bankruptcy estate," including
17 "'all legal or equitable interests of the debtor in property,'
18 which has been interpreted to include causes of action." Flowers
19 v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 75429, at *7-8
20 (N.D. Cal.) (citing, among other authority, 11 U.S.C. § 541(a);
21 Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705,
22 707 (9th Cir. 1986)). "Accordingly, a bankruptcy petitioner loses
23 standing for any causes of action and the estate becomes the only
24 real party in interest unless the bankruptcy trustee abandons the
25 claims." Id. at *8 (citing In re Lopez, 283 B.R. 22, 28-32 (9th
26 Cir. 2002); In re Pace, 146 B.R. 562, 565-66 (9th Cir. 1992)).
27 The petitioner may re-gain standing if the bankruptcy trustee
28 abandons the claims. See, e.g., Rowland v. Novus Fin. Corp., 949

9

F. Supp. 1447, 1454 (D. Haw. 1996). "Property of a bankruptcy estate can be abandoned by three methods: (1) after notice and hearing, the trustee may unilaterally abandon property that is 'burdensome . . . or . . . of inconsequential value' (11 U.S.C. § 554(a)); (2) after notice and hearing, the court may order the trustee to abandon such property (11 U.S.C. § 554(b)); (3) any property which has been scheduled, but which has not been administered by the trustee at the time of closing of a case, is abandoned by operation of law. (11 U.S.C. § 554(c).)" Cloud v. Northrop Grumman Corp., 67 Cal. App. 4th 995, 1003 (1998).

Plaintiff does not dispute that the ongoing bankruptcy case divests him of standing to assert these claims. Instead, he argues that, if he amends his bankruptcy filings to add these claims to his schedules, "there is no reason to believe that this case will not be abandoned by the Trustee." Opp. at 4. However, there has not yet been any abandonment of these claims. Thus, it is not disputed that, at the present time, Plaintiff does not have standing to prosecute these claims.

Plaintiff responds that, "it would be improper to dismiss Plaintiff for lack of standing, because an amendment will fix any standing issue." Id. Plaintiff cites a case that stands for the proposition that dismissal of a complaint without leave to amend is improper, absent unusual circumstances, unless it is clear that it could not be saved by any amendment. Id. (citing Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996)). However, no amendment of his complaint could remedy this standing deficiency. To the extent that Plaintiff argues that amendment of the schedules in his bankruptcy case could save the instant case, this doctrine is

10

inapplicable, because it refers to amendment of the pleadings in the instant case. Further, amendment of his bankruptcy schedules alone would not "fix any standing issue." The bankruptcy trustee would also have to abandon the claims but might not do so. Finally, it is not clear that Plaintiff will be permitted to amend his bankruptcy filings to schedule these claims. Although no court approval is required for amendment of a bankruptcy petition or schedule before the case is closed and amendment is "liberally allowed," the bankruptcy court may deny leave to amend in certain circumstances, including upon "a showing of a debtor's bad faith or of prejudice to creditors." In re Michael, 163 F.3d 526, 529 (9th Cir. 1998) (internal quotation marks and citations omitted).

Accordingly, the Court GRANTS Wells Fargo's motion to dismiss this case for lack of standing. Because the Court dismisses Plaintiff's case in its entirety for lack of standing, the Court need not reach Wells Fargo's alternative arguments. Nevertheless, the Court addresses certain other arguments made by Wells Fargo.

II. Quiet Title

"The purpose of a quiet title action is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to." Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 974 (N.D. Cal. 2010) (internal quotation marks and citations omitted). A quiet title action must include in a verified complaint: "(1) a description of the property in question; (2) the basis for plaintiff's title; and (3) the adverse claims to plaintiff's title." Ananiev v. Aurora

11

Loan Servs., LLC, 2012 U.S. Dist. LEXIS 132489, at *9-10 (N.D. Cal.); Cal. Civ. Proc. Code § 760.020.

"In order to satisfy the second requirement, plaintiff must allege that he has discharged his debt, regardless to whom it is owed." Id. (citing Kelley v. Mort. Elec. Registration Sys., Inc., 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)); see also Miller v. Provost, 26 Cal. App. 4th 1703, 1707 (1994) ("This rule was based on the equitable principle that a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee."). "That is, to state a claim, Plaintiff must allege a valid and viable offer of tender." Sowinski v. Wells Fargo Bank, N.A., 2012 U.S. Dist. LEXIS 168198, at *4-5 (N.D. Cal.) (citing Chancellor v. OneWest Bank, 2012 U.S. Dist. LEXIS 125249, at *10 (N.D. Cal.)).

Wells Fargo argues that Plaintiff has failed to state a claim to quiet title because he has failed to allege tender sufficiently. Plaintiff responds that his tender allegation is sufficient because he "is only seeking that the refinance agreement be invalidated and the original agreement be restored" and he "has offered to tender the reinstatement amount to bring the original loan agreement current." Opp. at 6-7; see also 2AC ¶ 21 ("If the 2005 refinance agreement is deemed void, and the original 2004 agreement becomes the operative Deed of Trust, Plaintiff hereby will and does tender each and every monthly payment under the original loan, including any fees and interests incurred due to any late payments.").

Plaintiff made a similar argument when opposing the motions to dismiss his 1AC. In the prior order resolving those motions,

12

the Court noted that, in his quiet title claim as plead in the 1AC, Plaintiff sought to remove all clouds from his title and requested a determination that he holds title to the property, free from all claims of Defendants, apparently including the original promissory note and deed of trust. See 1AC ¶¶ 36, 37 ("Plaintiff seeks to quiet title against the claims of Defendants, and each of them. . . . Defendants and each of them, has no valid, lawful, or equitable title, estate, lien or interest in the Property. Defendants do not . . . own or have a legal interest in the pertinent notes secured by the corresponding deeds of trust."). The Court found that, as a result, absent an allegation that he had paid the full amount of the original loan, Plaintiff has not stated a claim to quiet title.

In his 2AC, in addition to requesting that "title be restored to him under the same terms of the original Deed of Trust executed between Plaintiff and Defendant on or around December 2004," Plaintiff also continues to demand "a judgment determining that the title claims by Defendants to Plaintiff's Property are without any right whatever and such Defendants have no right, title, estate, lien, or interest in the above-described property or any part thereof." 2AC ¶ 28 & Prayer for Relief ¶ 8. Thus, Plaintiff still requests that title be quieted in his favor free from all claims of Wells Fargo, including those rights under the original agreement. Thus, absent an offer of tender of the full amount of the original loan, Plaintiff has not remedied the deficiencies as to his quiet title claim.

To the extent that Plaintiff contends that, "under the Civil Code," he is required to tender only the amount required to

13

reinstate his original loan and not the full amount of indebtedness, Plaintiff's arguments are unavailing. Plaintiff appears to base this argument on provisions in California Civil Code section 2924c that allow a mortgagor to cure a default and reinstate a mortgage by paying the amounts in default and costs and expenses incurred in enforcing the obligation within a particular time period. However, here, Plaintiff does not demand only that the original agreement be reinstated; he also seeks a determination that Wells Fargo has no right, title or interest in the property whatsoever.

Accordingly, Wells Fargo's motion to dismiss Plaintiff's quiet title claim is granted. Because Plaintiff was given a prior opportunity to remedy the deficiencies in his claim and was unable to do so, dismissal is with prejudice.

III. Wrongful Foreclosure

Plaintiff alleges that Wells Fargo's conduct violated California Civil Code section 2924, because the notice of default did not specify the nature of the breach actually known to Wells Fargo or an accurate amount of arrears due to its inclusion of penalties and fees related to the forged refinancing agreement. Plaintiff alleges that, as a result of the statutory violations, Wells Fargo should be precluded from foreclosing on his property and selling it in a trustee's sale. 2AC ¶ 36. He also alleges that Wells Fargo's actions have caused him "substantial injury" and that he is entitled to recover actual damages based on, among other things, "a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration,

14

1 fear, anger, helplessness, nervousness, anxiety, sleeplessness,
2 sadness, and depression." Id. at ¶ 37.

3 In the order granting the earlier motions to dismiss, the
4 Court noted, "Under California law, a 'lender or foreclosure
5 trustee may only be liable to the mortgagor or trustor for
6 wrongful foreclosure if the property was wrongfully or illegally
7 sold under a power of sale contained in a mortgage or deed of
8 trust.'" Docket No. 47, 19 (citing, among others, Permito v.
9 Wells Fargo Bank, N.A., 2012 U.S. Dist. LEXIS 55977, at *9 (N.D.
10 Cal.) ("The first element for a wrongful foreclosure claim is that
11 the property was illegally or fraudulently sold under a power of
12 sale in a deed of trust."); Chancellor v. OneWest Bank, 2012 U.S.
13 Dist. LEXIS 71992, at *24-26 (N.D. Cal.) (dismissing without
14 prejudice a wrongful foreclosure claim as "premature" where the
15 plaintiff alleged that a foreclosure sale was scheduled but not
16 that it had already occurred)). The Court stated that, "if a
17 trustee's sale has not yet taken place, Plaintiff's claim for
18 damages as a result of the wrongful foreclosure is premature."
19 Id. at 19-20.

20 Plaintiff has now clarified that a trustee's sale has not yet
21 taken place. He argues that he can nevertheless bring a claim for
22 wrongful foreclosure in order to enjoin the foreclosure sale.
23 However, as in his 1AC, in addition to seeking to stop the
24 foreclosure process, Plaintiff alleges that he has suffered
25 "substantial injury" and requests that he be awarded "actual
26 damages" that he suffered from the purportedly wrongful
27 foreclosure. 2AC ¶ 37. Accordingly, Wells Fargo's motion to
28 dismiss Plaintiff's claim for damages as a result of a wrongful

15

foreclosure that has not taken place is granted, without leave to amend.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Wells Fargo's motion to dismiss (Docket No. 49). Dismissal is without prejudice to refiling if Plaintiff schedules his claims and they are abandoned by the bankruptcy trustee, except that Plaintiff may not renew the quiet title claim and, prior to any foreclosure sale, may not renew his claim for damages for wrongful foreclosure.

The Clerk shall enter judgment and close the file. Defendants shall recover their costs from Plaintiff.

IT IS SO ORDERED.

Dated: 4/8/2013

CLAUDIA WILKEN
United States District Judge

16